MATTER OF TALBOT-PHIBBS

In Deportation Proceedings

A-14129267

*Decided by Board November 5, 1965*

An alien, who, shortly after birth in 1948 in South Africa, was adopted in that country within the meaning of section 101(b)(1)(E), Immigration and Nationality Act, as amended, by nonresidents thereof, with whom she resided until she was 18 years of age, may, pursuant to and within the meaning of section 202(a)(4) of the Act, be charged to the quota of Great Britain, to which her adoptive father is chargeable, for the purpose of adjustment of status under section 245 of the Act.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant, remained longer.

An order entered by the special inquiry officer on April 23, 1965 grants the respondent's application for status as a permanent resident alien under the provisions of section 245 of the Immigration and Nationality Act, as amended (8 U.S.C. 1255). The deportation proceeding was terminated and the Immigration Service took no appeal. The Immigration Service on June 15, 1965 moved for a reconsideration of the special inquiry officer's order granting relief under section 245 (*supra*). The special inquiry officer in an order entered on August 4, 1965 affirmed his prior order of April 23, 1965 and certified the case to the Board of Immigration Appeals for final decision on a matter of law.

The respondent is a native of South Africa and a citizen of Great Britain. She last entered the United States through the port of Honolulu, Hawaii, on or about February 5, 1964. She was admitted as a visitor for pleasure authorized to remain in the United States until August 4, 1964. Thereafter, the time for her departure was extended to October 14, 1964. She has remained in the United States subsequent to October 14, 1964 without permission and she concedes that she is deportable as charged in the order to show cause.

The respondent applied for status as a permanent resident alien under section 245 of the Immigration and Nationality Act, as

amended. She was born on July 28, 1943 at Cape Town, South Africa, and shortly after her birth she was adopted by James Owen Talbot-Phibbs, a native of Ireland, and his wife, Nancy Jean Talbot-Phibbs, a native of Australia. Her adoptive parents were in Northern Rhodesia on assignment by the British Government Colonial Service at the time of her adoption. The respondent testified that she was adopted when about three weeks of age and that she resided with her parents until she was 18 years of age. Immediately after her adoption she was taken to Northern Rhodesia by her adoptive parents where they remained until 1952. Documentary evidence submitted by the respondent supports her testimony with regard to her birth in South Africa and her adoption by the Talbot-Phibbs family.

-By virtue of her adoption while under the age of 14 years the respondent claims that she is chargeable to the British quota since her adoptive father is a British subject. The record establishes that the respondent was inspected and admitted at the time of her entry on February 5, 1964. She has been examined by an officer of the United States Public Health Service and found to be medically admissible to the United States. She testified that she has never been arrested or convicted of any violation of law. An immigration visa is immediately available to her provided she is chargeable to the quota for Great Britain which is presently open in all categories.

The issue of law before us concerns an interpretation of section 202(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1152 (a)(4))[1] which provides in substance that an alien born in a country in which neither of his parents was born or was a resident at the time of such alien's birth may be charged to the quota area of either parent. The special inquiry officer finds that under the provisions of sections 101(b)(1)(E)[2] and 101(b)(2) of the Immigration and

---

[1] Section 202(a)(4) of the Immigration and Nationality Act reads as follows: ". . . For the purposes of this Act, the annual quota to which an immigrant is chargeable shall be determined by birth within a quota area, except that—(4) an alien born within any quota area in which neither of his parents was born and in which neither of his parents had a residence at the time of such alien's birth may be charged to the quota area of either parent; . . ."

[2] The Act of September 11, 1957 (71 Stat. 639) added subdivision (E) to section 101(b)(1). It reads as follows: "As used in titles I and II— (1) The term "child" means an unmarried person under twenty-one years of age who is—(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided*, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

Nationality Act[3] the respondent and her adoptive father James Owen Talbot-Phibbs, a British subject, may be considered to have the relationship of parent and child to each other and therefore may be charged to the quota of Great Britain pursuant to and within the meaning of section 202(a)(4) of the Immigration and Nationality Act (*supra*[1]).

It is the Service position that section 202(a)(4) is not broad enough to encompass an adopted child and its benefits must be limited to a legitimate child of natural parents. It is urged that to encompass an adopted child such as the respondent, section 202 (a)(4) would have to be construed as though it read "in which neither of his parents had a residence at the time of such alien's birth *or adoption.*" (Emphasis supplied.) The Service maintains that the regulations of the Department of State[4] which implement section 202(a)(4) support this position.

The amendment of section 101(b) of the Act of September 11, 1957 is remedial legislation and should be liberally construed. The term "parent" is defined in relation to the term "child" in section 101(b)(1) and (2) of the Immigration and Nationality Act. The significant word in the definition of "parent" is "relationship" and this is found in a phrase which reads "where the *relationship* exists by reason of *any* of the circumstances set forth in (1) above." (Emphasis supplied.) The word "circumstances" found in the above quoted phrase relates to the categories of relationship set forth in section 101(b)(1) (*supra*). The categories of relationship were expanded by the Act of September 11, 1957 to include "an illegitimate child" for whom benefits are sought by virtue of a relationship

---

[3] Section 101(b)(2) was not amended by the Act of September 11, 1957. It reads as follows: As used in titles I and II—(2) The terms "parent", "father", or "mother" mean a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in (1) above.

[4] 22 CFR 42.54 (revised January 10, 1963, 28 Fed. Reg. 275) read as follows: *Exception for alien born in quota area of which neither of his parents was a resident.* An alien who is not a Chinese person and who is not otherwise attributable by as much as one-half of his ancestry to a people or peoples indigenous to the Asia-Pacific triangle, who was born in a quota area in which neither of his parents was born and *in which neither of his parents had a residence at the time of his birth,* may be charged to the quota of either parent as provided in section 202(a)(4) of the Act. The parents of such an alien shall not be considered as having acquired a residence within the meaning of section 202(a)(4), *if at the time of such alien's birth within the quota area* they were merely visiting temporarily or were stationed *there* under orders or instructions of an employer, principal or superior authority foreign to such quota area in connection with the business or profession of the employer, principal or superior authority (Emphasis supplied.) (Sec. 202, 66 Stat. 177; 8 U.S.C. 1152).

to its mother and a "child adopted while under the age of fourteen years" provided the child has been in the legal custody of and has resided with the adopting parents for at least two years.

The Department of State followed this interpretation of section 101(b)(1) and (2) in a case involving an illiterate mother of a 29-year-old United States citizen. It was held that the mother was a "parent" and entitled to the exemption from illiteracy provided by section 212(b) on the ground that the language used in section 101 (b)(2) which reads "*circumstances* set forth in (1) above" refers to circumstances leading to a child-parent relationship as specified under subparagraphs (A), (B), (C), (D), (E); namely, a legitimate birth, a stepchild relationship, a legitimated child, an illegitimate child in relationship to its mother, or an adopted child. The State Department held that the phrase "unmarried person under twenty-one years of age" did not limit a child-parent relationship where the relationship is the determining factor for the accrual of benefits to the alien. Under this view the word "circumstances" relates to "a child adopted while under the age of fourteen years" provided the child has been in the legal custody of and has resided with the adopting parents for at least two years. We find nothing in either section 202(a)(4) or section 101(b) which distinguishes the respondent's case from that of the illiterate mother who was given an exemption under section 212(b) of the Immigration and Nationality Act.

The language of the statute is clear. Section 202(a)(4) is found in Title II of the Immigration and Nationality Act. Section 101(b) specifically states in its preamble that "The term 'child' . . . as used in titles I and II (of the Act) mean . . ." a child adopted under the circumstances which prevail in respondent's case. We find no basis for the trial attorney's suggestion that the wording of section 202(a)(4) of the Act should be construed as though it read "in which neither of his parents had a residence at the time of such alien's birth or *adpotion*." (Emphasis supplied.)

We find the respondent chargeable to the British quota and will affirm the decision and order of the special inquiry officer granting her application for status as a permanent resident alien and terminating this proceeding.

**ORDER:** The order entered by the special inquiry officer on August 4, 1965 granting the alien's application for status as a permanent resident alien under section 245 of the Immigration and Nationality Act, as amended, and terminating this proceeding is hereby affirmed.